IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

**STATE OF TENNESSEE v. ALGERNON CROSS**

**Direct Appeal from the Criminal Court for Davidson County
No. 2003-B-1083    Steve Dozier, Judge**

---

**No. M2004-01930-CCA-R3-CD - Filed May 25, 2005**

---

A jury convicted the Defendant, Algernon Cross, of one count of facilitation of possession with the intent to sell .5 grams or more of a schedule II controlled substance and one count of unlawful possession of a handgun by a convicted felon.  The trial court sentenced the Defendant to an effective sentence of fourteen years.  The Defendant appeals, contending that: (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred on two of its evidentiary rulings; and (3) the trial court erred when it sentenced him.  Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Jennifer Lynn Thompson, Nashville, Tennessee for the appellant, Algernon Cross.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION
I.  Facts**

As a result of a search warrant, a grand jury indicted the Defendant for one count of possession of .5 grams or more of a controlled substance with the intent to sell or deliver, one count of unlawful possession of a handgun by a convicted felon, and one count of possession of a controlled substance.  The following evidence was presented at the Defendant's trial: Shauna Dixon, an officer with the Metropolitan Police Department, testified that she is assigned to a small, undercover unit within the police department.  She said that all of her duties involve drug investigations, and she has previously worked undercover to purchase drugs.

Officer Dixon testified that, in February and March of 2003, her unit was investigating a residence located at 706 26th Avenue, which is located in Davidson County. She said that, based upon this investigation, she sought and obtained a search warrant for this property. The officer explained that, prior to executing the search warrant, she did some background investigating to attempt to determine who was selling drugs from the residence. She determined that the electric bill was listed in the name of Betty Jean Sherley. The officer stated that, prior to executing the search warrant, she never came across the Defendant's name during the course of her investigation.

Officer Dixon stated that she assisted in executing the search warrant of this residence. She said that the officers knocked on the door, announced their presence, and then requested that the door be opened. When the door was not opened, they forcibly entered the home, and Officer Dixon was the second officer to enter the home. She said that, upon entering, she saw two women in the living room and the Defendant in a bedroom sitting on a bed with headphones on, and the Defendant's hand "went under the pillow." When the officer asked to see the Defendant's hands, he complied. The officer placed the Defendant in handcuffs and then looked under the pillow where his hand had been, and she found a loaded semi-automatic Ruger pistol, which she seized pursuant to the search warrant. After placing the Defendant in handcuffs, the officer searched the room, and she found some white rock in a bag on the dresser that she believed was crack cocaine, a plate with some white powder residue that field-tested positive for cocaine, digital scales, plastic baggies, and three walkie-talkies. On the plate with the white powder, was the Defendant's identification card. Additionally, she found another shotgun in the closet, a small white rock inside a man's blue shirt, and a crack pipe on the windowsill.

In the living room, the officer found some marijuana and some white rock in a M & M container. She said that she tagged all of the evidence that she found at the house and placed it in a box. The officer said that she created an inventory list that documented everything that she found in the house. She then turned the evidence over to the property room, which is a secured facility where things are logged by a specific incident number. The officer said that she sent the suspected drugs to the Tennessee Bureau of Investigation ("TBI") to be tested and weighed. Officer Dixon testified that she informed the Defendant of his <u>Miranda</u> rights, and, thereafter, the Defendant told her that he was "staying" in the house that was searched, and he asserted that the room where he and the drugs were found was his room.

On cross-examination, the officer said that she took handwritten notes documenting what the Defendant told her at the scene. She said that she no longer had those notes because she discarded them after she completed her investigative report. Officer Dixon testified that she obtained the search warrant in this case on March 7, 2003, at 10:40 a.m., but the police did not execute the warrant until March 10, 2003, at 9:25 p.m. The officer said that she did not make a voice recording of the Defendant's statements at the scene because she did not have a tape recorder with her at the time. The officer said that, on the investigative report, she listed the Defendant's address as one other than the one where the search warrant was executed. The officer confirmed that there were two women in the house when the search warrant was executed. She conceded that her background investigation did not show the Defendant's named tied to the house or to any of the bills. Further,

she said that Sherley, the owner of the house, was married, and her husband had previously been arrested. Sherley was also present, and was arrested, at the time the search warrant was executed. Officer Dixon described Sherley as a "large woman," who was between the ages of twenty-five and thirty-five. The officer conceded that the blue shirt found in the bedroom could have belonged to Sherley. The officer said that she did not fingerprint either of the guns, the bullets or the plate, all of which she found in the bedroom. Officer Dixon testified that, while the Defendant admitted that he was "staying" in the room, he denied that the drugs were his.

On redirect examination, the officer testified that she found a piece of paper near the Defendant's CD player that had some writing on it that appeared to be several weight amounts. The officer conceded on cross-examination that she did not know whether it was the Defendant's handwriting on the paper.

Phillip Sage, a Sergeant with the Metropolitan Police Department, testified that it is his responsibility to supervise the property section, which maintains the custody, control, and safety of all items turned into the property section. He said that each piece of evidence gets its own unique number, and the number is put into the department's tracking system. Sergeant Sage said that narcotics and firearms are kept in a vault that is even more secure than the rest of the property room. The sergeant testified that the all the evidence in this case was accepted and checked into the property room, and he checked it out to bring to the Defendant's trial.

Glen Everett, a Special Agent with the TBI Crime Laboratory, testified about the manner in which he received the narcotics in this case. He testified that one of the bags of drugs given to him by police contained cocaine base, or crack cocaine, and the cocaine weighed 17.5 grams. Another bag contained a chunky, rock-like substance that he determined was cocaine, and it weighed 1.0 gram. A third bag contained 0.6 gram of cocaine, and a fourth bag contained 0.9 gram of cocaine. On cross-examination, the agent said that he was not the person who checked in the evidence, but his records showed that the evidence was delivered to the TBI by Sergeant Sage and received by Kenya Maryland, who is an evidence technician at the TBI Crime Lab. Agent Everett conceded that Maryland was not present to testify, and he could not be sure that she followed standard operating procedure, which is to seal the evidence and place it in the TBI vault. The agent said that it was very unlikely that the evidence was tampered with. The agent stated that he had a record as to how the drugs in this case came and left the TBI Crime Lab. Agent Everett testified that he did not conduct any fingerprint analysis of any of the evidence submitted in this case.

In a proceeding outside the presence of the jury, the Defendant's counsel requested that the Defendant be allowed to present evidence of Sherley's guilty plea. The Defendant's counsel contended that Sherley's guilty plea to these crimes was exculpatory to the Defendant. The trial court disagreed, and it ruled that evidence of Sherley's guilty plea was inadmissible.

Michelle Cross, the Defendant's wife, testified that, on March 10, 2003, prior to the execution of the search warrant in this case, the Defendant had been living with his mother. Cross explained that, around the end of February 2003, she and the Defendant had an argument, and she

told him that she needed some space, so the Defendant moved back in with his mother. She said that she knew that the Defendant was living with his mother because that is where she and her children called and visited him and where the Defendant kept his clothes. Cross said that she visited the Defendant at his mother's home at least twice a week. She said that, at that time, the Defendant did not have a valid drivers' license, and she had to drive him to and from work. On cross-examination, Cross conceded that she did not know what the Defendant did when he was not in her presence. She also said that the Defendant's mother's house was only a few blocks away from the house where the search warrant was executed and where the Defendant was arrested.

Valeria Cross, the Defendant's mother, testified that the Defendant was living with her on March 10, 2003. Valeria Cross said that, about a week before, the Defendant told her that he and his wife were fighting because of financial problems, and he asked if he could stay with her for a while. The Defendant moved into her home and brought some of his clothes and his toothbrush. She said that on Sunday, March 9, 2003, she cooked for the Defendant and discussed with him things that had happened at church that day. She said that the Defendant was arrested the next day at a different house. On cross-examination, Valeria Cross testified, at the time, the Defendant was working at Jiffy Lube five days a week, and she would take him to work because he could not drive. She said that, on the Monday that the Defendant was arrested, she did not take him to work because he was in the process of transferring to a different Jiffy Lube location. Valeria Cross testified that she worked at a hospital at night, and she saw the Defendant before she left for work on Sunday evening. She said that, when she returned on Monday morning, she checked his room and there was a "body" in his bed, and she assumed that it was the Defendant. When she awoke on Monday afternoon the Defendant was not there.

The Defendant called Officer Dixon to testify again, and she said that, at the preliminary hearing she testified that the Defendant's hands were down in front of him. She did not mention that the Defendant reached under a pillow. Officer Dixon also said that, at the hearing, she did not mention that she found the Defendant's identification in the room. She explained that she was not asked about the identification specifically.

Based upon this evidence, the jury found the Defendant guilty of the lesser-included offense of facilitation of possession with the intent to sell .5 grams or more of a substance containing cocaine and of unlawful possession of a handgun. The jury acquitted the Defendant of possession of a controlled substance. Because the jury found the Defendant guilty of unlawful possession of a handgun, the trial court instructed the jury that it would now have to determine whether the Defendant was a convicted felon in unlawful possession of a handgun. In that regard, the State offered proof, through Erika Peters, who works as a Deputy Clerk, that the Defendant had previously pled guilty to possession with intent to sell .5 grams or more of cocaine on November 19, 1998, and, on July 6, 1999, he pled guilty to possession with intent to sell under .5 grams of cocaine. The jury found the Defendant guilty of unlawful possession of a handgun by a convicted felon.

The trial court subsequently held a sentencing hearing where the presentence report was introduced into evidence. The parties agreed that the Defendant was a Range II offender and that

the Defendant was on parole when the crimes in this case were committed. The trial court sentenced the Defendant, a Range II offender, to an effective sentence of fourteen years.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred on two of its evidentiary rulings; and (3) the trial court erred when it sentenced him.

## A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain his convictions for one count of facilitation of possession with the intent to sell .5 grams or more of a schedule II controlled substance and one count of unlawful possession of a handgun by a convicted felon. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Carter, 121 S.W.3d 579, 588 (Tenn. 2003); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

A conviction may be based entirely on circumstantial evidence where the facts are "'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone.'" State v. Reid, 91 S.W.3d 247, 277 (quoting State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993)). The jury decides the weight to be given to circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (1958) (citations omitted). While single facts, considered alone, may count for little weight, when all of the facts and circumstances are taken together, they

can point the finger of guilt at the Defendant beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Further, "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions . . . for the jury." Marable, 203 Tenn. 440, 313 S.W.2d at 457; see also State v. Gregory, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993).

## 1. Facilitation of Possession of Cocaine

The Defendant first asserts that the evidence is insufficient to sustain his conviction for facilitation of possession with the intent to sell .5 grams or more of a schedule II controlled substance, cocaine. Under Tennessee Code Annotated section 39-17-417(a) (2003), "[i]t is an offense for a defendant to knowingly: . . . Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance." A person is guilty of possession with intent to sell or deliver cocaine, a Class B felony, "if the amount involved is point five (.5) grams or more of any substance containing cocaine." Tenn. Code Ann. § 39-17-417(c)(1). To be found guilty of possession with intent to sell cocaine, the State must prove that the drug was, in fact, cocaine. Tenn. Code Ann. § 39-17-408(b)(4) (2003). The State must also prove the intent to sell the drugs to another, which can be proven through circumstantial evidence.

Tennessee Code Annotated section 39-17-417(a), prohibiting possession of a controlled substance, "is not restricted to proof of actual possession, and evidence of either constructive possession or other control over the substance is sufficient to establish this element." State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001). Constructive possession of a drug is based upon the power and intention to exercise dominion and control over the drug, either directly or through others. Id. "In other words, 'constructive possession is the ability to reduce an object to actual possession.'" Id. at 845 (quoting State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996) (citations omitted)). "As such, although a defendant's mere presence at a place where controlled substances are found will not support an inference of possession, a person in possession of the premises where controlled substances are found may also be presumed to possess the controlled substances themselves." Id. (citation omitted).

Further, in Tennessee, "[a] person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility required under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (2003). This statute applies to a person who facilitates the criminal conduct of another by knowingly furnishing substantial assistance, but who lacks the intent to promote, assist, or benefit from the commission of the felony. See Tenn. Code Ann. § 39-11-403 Sentencing Comm'n Cmts.; State v. Fowler, 23 S.W.3d 285, 287 (Tenn. 2000); State v. Carl E. Leggett, Sr., No. M2003-01388-CCA-R3-CD, 2004 WL 1434488, at *2-3 (Tenn. Crim. App., at Nashville, June 25, 2004), *no perm. app. filed*. "The facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged," which here would be a Class C felony. See Tenn. Code Ann. § 39-11-403(b). Thus, in order to convict the Defendant, the State was required to prove the following elements:

(1) That the Defendant knew that another person intended to commit the specific felony of possession of .5 grams or more of cocaine with the intent to sell or deliver, but did not have the intent to promote or assist the commission of the offense or to benefit in the proceeds or results of the offense;

(2) That the Defendant furnished substantial assistance to that person in the commission of the felony; and

(3) That the Defendant furnished such assistance knowingly.

Leggett, 2004 WL 143448, at *3 (citing Tenn. Code Ann. §§ 39-11-403(a); 39-17-417(a)(4); T.P.I.–Crim. 3.02). "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b).

As to the first element, when the evidence is viewed in the light most favorable to the State, it is sufficient to prove that the Defendant knew that another person intended to commit the specific felony of possession of .5 grams or more of cocaine with the intent to sell or deliver it, but did not have the intent to promote or assist in the commission of the offense or to benefit in the proceeds or results of that offense. Officer Dixon observed the house that was searched and determined that drugs were being sold from the house. She presented an affidavit that stated this to the court and applied for a search warrant. Prior to the execution of the warrant, she conducted a background investigation that revealed that the electric bill was listed in the name of Betty Jean Sherley, and she never came across the Defendant's name during the course of her investigation. When the search warrant was executed, Sherley, the owner of the house, was present and was arrested. The Defendant was also present at this time, and he was listening to a CD player in one of the bedrooms of the house. The officers found two handguns and over 20 grams of cocaine in the room. The Defendant told police that he was "staying" in the room. This evidence proves the first element of this offense.

Similarly, the evidence is sufficient to prove the next two elements, namely that the Defendant provided substantial assistance and that he did so knowingly. The Defendant was "staying" in the room where officers found over 20 grams of cocaine. Some of the drugs were located on top of a dresser in plain view of the bed on which the Defendant was sitting. The Defendant's identification was found on top of the dresser near the drugs. The Defendant was charged with possession of .5 grams or more of cocaine with the intent to sell or deliver it, but the jury rejected that offense, possibly because there was no direct evidence that the Defendant owned the residence. Nevertheless, the evidence was sufficient for a jury to find beyond a reasonable doubt that the Defendant, by residing in the bedroom where the drugs were found in his plain sight, knowingly furnished substantial assistance in the commission of a felony.

## 2. Unlawful Possession of a Handgun

The Defendant next asserts that the evidence is insufficient to sustain his conviction for being a felon in possession of a handgun. The Defendant was convicted under Tennessee Code Annotated section 39-17-1307 (2003), which requires the State to prove that: (1) the Defendant possessed a

handgun; and (2) was previously "convicted of a felony drug offense." Tenn. Code Ann. § 39-17-1307(b)(1)(B). There is no dispute that the Defendant was convicted of possession with intent to sell over .5 grams of cocaine in 1998 and possession with intent to sell under .5 grams of cocaine in 1999. The only issue is whether the Defendant was in possession of the handgun.

The evidence is sufficient to prove that the Defendant possessed the handgun because he clearly had control over the handgun at the time that Officer Dixon executed the search warrant. When Officer Dixon entered the room where the Defendant was located, and that the Defendant admitted was his own, she saw the Defendant reach under the pillow. She told the Defendant to put his hands in the air, which he did. The officer then found a handgun under the pillow where the Defendant reached. This evidence clearly supports the jury's inference that the Defendant had actual possession of the handgun. Therefore, this evidence, in combination with the evidence of the Defendant's prior convictions, is sufficient to sustain the Defendant's conviction for being a felon in the possession of a handgun.

### C. Evidentiary Issues

The Defendant contends that the trial court erred when it did not allow the Defendant to introduce evidence to the jury that another person committed this crime and when it admitted drug evidence when the chain of custody was not established.

### 1. Third Party Guilty Plea

The Defendant sought to offer proof that Betty Jean Sherley, who owned the house that was searched and who was arrested along with the Defendant, pled guilty to possession of over .5 grams of cocaine. The trial court excluded this on the grounds that it was not relevant because the fact that Sherley pled guilty does not mean that the Defendant was not also guilty. Further, the trial court noted that the Defendant could have called Sherley as a witness. On appeal, the Defendant contends that the trial court erred because it is well established that a defendant should be allowed to present proof tending to show that another had the motive and opportunity to have committed the offense.

In Tennessee, the determination of whether proffered evidence is relevant in accordance with Tennessee Rule of Evidence 402 is left to the sound discretion of the trial judge, as is the determination of whether the probative value of evidence is substantially outweighed by the possibility of prejudice pursuant to Tennessee Rule of Evidence 403. State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999) (citing State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995)); State v. Burlison, 868 S.W.2d 713, 720-21 (Tenn. Crim. App. 1993)). In making these decisions, the trial court must consider the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial. State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995). We will only disturb an evidentiary ruling on appeal when it appears that the trial judge arbitrarily exercised his discretion. State v. Baker, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989).

Initial questions of admissibility of evidence are governed by Tennessee Rules of Evidence 401 and 403. These rules require that the trial court must first determine whether the proffered evidence is relevant. Pursuant to Rule 401, evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." See Forbes, 918 S.W.2d at 449. In other words, "evidence is relevant if it helps the trier of fact resolve an issue of fact." Neil P. Cohen, et al., Tennessee Law of Evidence § 4.01[4], at 4-8 (4th ed. 2000). After the trial court finds that the proffered evidence is relevant, it then weighs the probative value of that evidence against the risk that the evidence will unfairly prejudice the trial. State v. James, 81 S.W.3d 751, 757 (Tenn. 2002). If the court finds that the probative value is substantially outweighed by its prejudicial effect, the evidence may be excluded. Tenn. R. Evid. 403. "Excluding relevant evidence under this rule is an extraordinary remedy that should be used sparingly and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion." James, 81 S.W.3d at 757-58 (quoting White v. Vanderbilt Univ., 21 S.W.3d 215, 217 (Tenn. Ct. App. 1999)).

The Tennessee Supreme Court has stated, "It has long been recognized by the courts of this state that an accused is entitled to present evidence implicating others in the crime." State v. Powers, 101 S.W.3d 383, 394 (Tenn. 2003) (citing Sawyers v. State, 83 Tenn. (15 Lea) 694, 695 (1885)). The Powers Court stated that the determination of whether such evidence is admissible is one of relevancy. The evidence to establish that someone other than the defendant is the guilty party must be such evidence as would be relevant on the trial of the third party; and the evidence offered by the accused as to the commission of the crime by a third party must be limited to such facts as are inconsistent with the defendant's guilt, and to such facts as raise a reasonable inference or presumption as to the defendant's innocence. Hensley v. State, 28 Tenn. 243 (1848). To be admissible, the evidence must be such proof that directly connects the third party with the substance of the crime, and tends to clearly point out someone besides the accused as the guilty person. Evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. 22A C.J.S. Criminal Law § 729 (1989).

In the case under submission, we conclude that the trial court did not abuse its discretion when it determined that the evidence that Sherley pled guilty to possession was not relevant. The drugs in this case were found in multiple places in the Sherley's house. There was some rock cocaine found in a container in the room where Sherley was at the time the search warrant was executed. There were also drugs found in the room where the Defendant was located. Furthermore, two people may have joint possession of drugs and both be guilty of this crime. Therefore, we conclude that the trial court did not abuse its discretion when it determined that Sherley's guilty plea had no effect on the Defendant's guilt, and that Sherley's guilty plea did not raise a reasonable inference or presumption as to the Defendant's innocence. This issue is without merit.

## 1. Chain of Custody

The Defendant next contends that the trial court erred when it allowed the State to introduce

the drug evidence without properly establishing the chain of custody. Specifically, the Defendant asserts that the State failed to prove "what happened to the drugs once they were brought to the TBI lab and before they were tested by the forensic chemist." Further, he asserts that the State failed to prove "what happened to the drugs after the chemist performed his testing and before they were returned to the custody of the [police department]".

In order to admit physical evidence, the party offering the evidence must either introduce a witness who is able to identify the evidence or must establish an unbroken chain of custody. State v. Holbrooks, 983 S.W.2d 697, 700 (Tenn. Crim. App. 1998). Whether the required chain of custody has been sufficiently established to justify the admission of evidence is a matter committed to the sound discretion of the trial court, and the court's determination will not be overturned in the absence of a clearly mistaken exercise of that discretion. Id. at 701. The identity of tangible evidence need not be proven beyond all possibility of doubt, and all possibility of tampering need not be excluded. State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000). The circumstances must establish a reasonable assurance of the identity of the evidence. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). The requirement that a party establish a chain of custody before introducing such evidence is "to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." Scott, 33 S.W.3d at 760 (citing State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993)).

> The concept of a "chain" of custody recognizes that real evidence may be handled by more than one person between the time it is obtained and the time it is either introduced into evidence or subjected to scientific analysis. Obviously, any of these persons might have the opportunity to tamper with, confuse, misplace, damage, substitute, lose and replace, or otherwise alter the evidence or to observe another doing so. Each person who has custody or control of the evidence during this time is a "link" in the chain of custody. Generally, testimony from each link is needed to verify the authenticity of the evidence and to show that it is what it purports to be. Each link in the chain testifies about when, where, and how possession or control of the evidence was obtained; its condition upon receipt; where the item was kept; how it was safeguarded, if at all; any changes in its condition during possession; and when, where and how it left the witness's possession.

Neil P. Cohen et al., Tennessee Law of Evidence § 9.01[13][c] (4th ed. 2000) (footnotes omitted).

We find no abuse of discretion by the trial court in this matter. Officer Dixon collected all of the evidence at the scene and labeled it using cards, and she kept the evidence with her as she processed the crime scene. She then took the evidence to the property room of the police department, where the evidence was logged in, sealed, and labeled, by another officer. Officer Dixon submitted a request for the TBI to perform a drug analysis on the evidence. Every piece of evidence in the property room is given a bar code number that is entered into a police tracking system, and all narcotics and firearms are kept in a vault with limited access. Sergeant Sage retrieved the evidence in this case from the vault, where the evidence had been located, and brought it to the TBI lab for

analysis. An evidence technician at the TBI crime lab received the hand-delivered evidence in this case from Sergeant Sage. Agent Everett opened the sealed evidence, and he tested it for drugs. He re-sealed the evidence and returned it to the property room. Sergeant Sage retrieved the evidence from the property room and brought it to the trial. Based upon this evidence, the trial court ruled that "there was absolutely no indication that [the evidence] had been tampered with or somehow altered, from the date of seizure to the day of analysis or even to the date of the court hearing." We conclude that the trial court did not abuse its discretion in this regard. This issue is without merit.

## C. Sentencing

On appeal, the Defendant contends that the trial court erred when it sentenced him. He asserts that the trial court erred when it enhanced his sentences based upon Blakely v. Washington, 124 S. Ct. 2531 (2004). When sentencing the Defendant the trial court found:

> In terms of enhancing and mitigating factors that may or may not be present, there are several enhancing factors that I do find are present; that is, the Defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. . . . It's acknowledged here that he's a Range Two offender; but there are additional misdemeanor convictions . . . one of which involves a weapon, and an additional felony conviction that couldn't necessarily be used to increase . . the range of a sentence, because it was committed at the same time. . . . In other words, there are two felonies committed at the same time, resulting in two convictions, only one of which could be used to classify him as to what range he is. . . . But that other felony that he was convicted of, back in nineteen-ninety-nine, was a drug offense, which could be used as a range; but there was also a felony weapons conviction at the same time.
>
> In addition, you have the acknowledged criminal behavior, that is the drug usage and selling that [the Defendant] has been involved in, plus the additional licensing convictions that [are] present. . . . I don't put much weight on those, but I do put weight on the two prior weapons convictions, that would be in addition to those convictions necessary to establish him as a Range Two offender. . . . So, that enhancement factor is present, as to both counts.
>
> I do find that also [the Defendant] has the enhancement factor of these felonies being committed while he was on parole, which is agreed upon. I mean, that – he's now back in the custody of the Department of Corrections. . . . So, that enhancement factor is present, as to both convictions, as well as . . . the enhancement factor of previous history of unwillingness to comply with release [into the community].
>
> I do think that the enhancement factor that the Defendant possessed – constructively in possession of, under the pillow there – a weapon can be used to enhance only Count One, obviously not Count Two, because that's the charge.

-11-

In summary, pursuant to Tennessee Code Annotated section 40-35-114, the trial court found that the following enhancement factors applied: (2) that the Defendant has a previous history of criminal convictions in addition to those necessary to establish the range; (9) that the Defendant has a previous history of unwillingness to comply with conditions of a sentence involving release in the community; (10) that the defendant possessed or employed a firearm; and (14) that the felony was committed while the Defendant was on parole. The trial court found that no mitigating factors applied, and it sentenced the Defendant to ten years for the Class C felony conviction and to four years for the Class E felony conviction. It ordered that the sentences be served consecutively.

When a defendant challenges the length, range or the manner of service of a sentence, it is the duty of this Court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "'conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001) (quoting State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999)); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994). In conducting a de novo review of a sentence, we must consider: (a) any evidence received at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or statutory enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Cmts.

In the case under submission, we conclude that there is ample evidence that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, we review its decision de novo with a presumption of correctness. Accordingly, so long as the trial court complied with the purposes and procedures of the 1989 Sentencing Act and its findings are supported by the factual record, this Court may not disturb this sentence even if we would have preferred a different result. See Tenn. Code Ann. § 40-35-210, Sentencing Comm'n Cmts; State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In calculating the sentence for a Class C and Class E felony conviction, the presumptive sentence is the statutory minimum for a Range II offender if there are no enhancement or mitigating factors. See Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence.

Tenn. Code Ann.§ 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Tenn. Code Ann. § 40-35-210(e). The sentence range for a Range II offender for a Class C felony is not less than six years or more than ten years. Tenn. Code Ann. § 40-35-112(b)(3) (2003). The sentence range for a Range II offender for a Class E felony is not less than two or more than four years. Tenn. Code Ann. § 40-35-112(b)(5) (2003).

The United States Supreme Court's recent opinion in <u>Blakely</u>, called into question the continuing validity of our current sentencing scheme. In that case, the Court, applying the rule in <u>Apprendi v. New Jersey</u>, 566 U.S. 466, 490 (2000), struck down a provision of the Washington sentencing guidelines that permitted a trial judge to impose an "exceptional sentence" upon the finding of certain statutorily enumerated enhancement factors. <u>Blakely</u>, 124 S. Ct. at 2537. The Court observed that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." <u>Id.</u> Finally, the Court concluded that "every defendant has a right to insist that the prosecutor prove to a jury [beyond a reasonable doubt] all facts legally essential to the punishment." <u>Id</u>. at 2539.

The Tennessee Supreme Court has determined that, despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury or admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of <u>Blakely v. Washington</u>, --- U.S. ----, 124 S.Ct. 2531 (2004), <u>United States v. Booker</u>, --- U.S. ----, 125 S.Ct. 738 (2005), or <u>United States v. FanFan</u>, the case consolidated with Booker. After a thorough analysis of the United State Supreme Court's reasoning in <u>Blakely</u>, <u>Booker</u>, and <u>FanFan</u>, the Tennessee Supreme Court determined that Tennessee's Sentencing Act does not violate the Sixth Amendment because "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." <u>State v. Gomez</u>, --- S.W.3d ---, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at *27 (Tenn. Apr. 15, 2005). Accordingly, the Defendant's reliance upon <u>Blakely</u> is misplaced. This issue has no merit

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's convictions and sentence.

_____
ROBERT W. WEDEMEYER, JUDGE

-13-